UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON GAY, et al.,<br>　　　　Plaintiffs,<br>　v.<br>PACIFIC STEEL GROUP,<br>　　　　Defendant. | Case No. 20-cv-08442-HSG<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 67 |
| ISRAEL BERBER,<br>　　　　Plaintiff,<br>　v.<br>PACIFIC STEEL GROUP,<br>　　　　Defendant. | Case No. 21-cv-03446-HSG<br>Re: Dkt. No. 45 |

The Court directed the parties to engage in targeted discovery regarding whether Plaintiffs' claims were subject to and preempted by collective bargaining agreements ("CBAs") and, if any dispute remained after discovery, to file motions for summary judgment on this narrow issue. Now pending before the Court are Defendant's motions for summary judgment. *Brandon Gay v. Pacific Steel Group*, 20-cv-08442-HSG ("*Gay* Case"), Dkt. No. 67 ("*Gay* MSJ"); *Berber v. Pacific Steel Group*, 21-cv-03446-HSG ("*Berber* Case"), Dkt. No. 45 ("*Berber* MSJ"). Both motions have been fully briefed. *See Gay* Case, Dkt. Nos. 68 ("*Gay* Opp."), 69 ("*Gay* Reply"); *Berber* Case, Dkt. Nos. 47 ("*Berber* Opp."), 48 ("*Berber* Reply").[1] The Court finds this matter

---

[1] The briefing on the two motions is very similar. The Court will only reference the briefing in the *Gay* case, the lower-numbered case, unless the briefing differs in some relevant way on a particular point.

appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motions for summary judgment.

## I. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

## II. DISCUSSION

### A. Evidentiary Objections

In support of its motion for summary judgment, Defendant submitted the declaration of David A. Perkins. *Gay*, Dkt. No. 67-1 ("Perkins Decl."). The Perkins Declaration has nine attached exhibits: three CBAs and several other documents which Defendant claims show that it was a party to the CBAs. *See id.* ¶¶ 3-11. Plaintiffs object to the declaration and exhibits on several grounds.

#### i. Personal Knowledge and Foundation

Plaintiffs argue that Mr. Perkins lacks personal knowledge of any of the CBAs or agreements executed before he became an employee of PSG in May 2017 (and a member of different trusts and boards in September 2020). *See Gay* MSJ Opp. at 3. Plaintiffs further argue that Mr. Perkins cannot authenticate Exhibit 7 because it is an agreement "purportedly entered into

2

between Western Steel Council, Inc. and the District Council of Iron Workers." *Id.* at 4. Plaintiffs also mention that Exhibits 6 and 8 "state that 'ratification' is required before any 'union contract negotiations' can bind PSG or its employees." *Id.* quoting *Gay* Dkt. 67-7, 67-9. Defendant responds that "Mr. Perkins testified that PSG maintains each document 'in the regular course of business.'" *Gay* MSJ Reply at 3 (quoting Perkins Decl. ¶¶ 6-11) (citations omitted). Defendant further argues that "[a]s the Executive Vice President for PSG, Mr. Perkins is in a position to authenticate agreements that PSG entered and to lay the proper foundation to establish that documents in PSG's possession are qualifying business records." *Id.* The Court agrees and **OVERRULES** Plaintiffs' lack of personal knowledge and foundation objections.

### ii. Best Evidence Rule

Plaintiffs argue that Mr. Perkins "provides no 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Gay* MSJ Opp. at 4 (quoting Fed. R. Evid. 901). Plaintiffs' arguments are very similar to the ones they raised regarding Mr. Perkins's personal knowledge. The Court find them equally unpersuasive and therefore **OVERRULES** Plaintiffs' best evidence rule objections.

### iii. Improper Legal Conclusion and Opinion as a Layperson

Plaintiffs object that Mr. Perkins's statement that "'PSG has entered into [CBAs] with unions representing PSG's iron workers in California during the last several years' is a bare legal conclusion from a layperson witness regarding (1) whether PSG was, in fact, a signatory to the 2014 and 2017 CBAs, (2) whether the 2014 and 2017 CBAs were, in fact applicable to PSG's iron workers, and (3) whether either Power of Attorney Authorization . . . . was ratified as required." *Gay* MSJ Opp. at 4-5 (quoting Perkins Decl. ¶ 2). The Court does not find this statement to be a legal opinion and therefore **OVERRULES** Plaintiffs' legal opinion objection.

### iv. Hearsay

Plaintiffs object to Exhibits 1-9 as inadmissible hearsay but the only argument they provide in support is that "Declarant provides no evidence to demonstrate that this out of court writing falls into a hearsay exception so as to make it admissible." *See Gay* MSJ Opp. at 5 (citing Fed. R. Evid. 801). Defendant points out that Exhibits 1-9 are "operative contractual documents which do

3

not implicate the hearsay rule" or, alternatively, are business records that "fall under Federal Rule of Evidence 803(d)'s exception to the hearsay rule." *Gay* MSJ Reply. at 3-4. The Court agrees with Defendant that the exhibits are properly considered on this motion and **OVERRULES** Plaintiffs' hearsay objection.

### B. Request for Judicial Notice

Defendant requests that the Court take judicial notice of Exhibits 1-3 to the Perkins Declaration (all CBAs) and of two orders from a Northern District of California case that is unrelated to this case. *Gay* Case, Dkt. No. 67-13. Having overruled the admissibility objections to the CBAs, the Court does not need to take judicial notice of the CBAs to consider them for purposes of these motions. The Court **TERMINATES AS MOOT** Defendant's request for judicial notice of the CBAs. The Court **DENIES** Defendant's request for judicial notice of two opinions issued in unrelated cases.

### C. Applicability of CBAs

Plaintiffs argue that they brought this action on behalf of Defendant's former and current employees and Defendant "has failed, and refused, to provide any evidence whatsoever that it solely employs iron workers who are subject to a CBA."[2] *Gay* Opp. at 14. Plaintiffs contend that PSG stated in a discovery response that it "is required to and does hire only those field iron workers who are members of the Union," but Plaintiffs deem this response insufficient because "Plaintiffs' complaints are not limited to 'field ironworkers.'" *Gay* MSJ Opp. at 14 (citations omitted). Citing *Curtis v. Irwin Indus., Inc.*, Defendant responds that a court "may dismiss a plaintiff's *class claims* if it determines that the *plaintiff's* entitlement to overtime was governed by a valid CBA." *Gay* MSJ Reply at 7 (emphasis in original) (citing 913 F.3d 1146, 1155 (9th Cir. 2019)). Plaintiffs argue *Curtis* is inapposite because they contend that, unlike in this case, 1) the Plaintiff in *Curtis* conceded that the CBA was generally applicable to his claim, and 2) "in *Curtis*,

---

[2] Plaintiffs make this argument in their introduction and in the context of arguing that their overtime claim—which the Court has already found to be preempted—is not actually preempted. As detailed below, the Court sees no reason to change its original preemption finding. In any event, the Court will address the factual issue of whether Defendant has established that Plaintiffs were covered by the CBA here, which is relevant to Plaintiffs' claims in general.

there was no dispute regarding the CBA's express provisions, rather that the CBA did not meet the requirements of section 514 because the definition of overtime (and overtime rates) were not the same as section 510's definition of overtime." *Gay* MSJ Opp. at 15.

Plaintiffs misconstrue *Curtis*, which established that in order to be exempted under § 514, a CBA must meet § 514's requirements.[3] *Curtis*, 913 F.3d at 1155 (reasoning that the "CBAs in this case meet the requirements of section 514, and therefore Curtis's claim for overtime pay is controlled by his CBAs"). It is true that this Court "has interpreted § 514 to require that a CBA must satisfy the section's requirements with respect to all employees covered by the CBA." *Gunawan v. Transdev Alternative Servs., Inc.,* No. 22-CV-04141-HSG, 2023 WL 2560360, at *3 (N.D. Cal. Mar. 17, 2023) (quotation omitted). But that does not lead to the conclusion that Defendant needs to show that the CBA applies to *all putative class members*: all this requirement means is that, for example, the required overtime rates must be met for all, not just some, of the employees covered by the CBA. *See, e.g., Johnson v. San Francisco Health Care & Rehab Inc.*, No. 22-CV-01982-JSC, 2022 WL 2789809, at *5 (N.D. Cal. July 15, 2022) (explaining that "[i]f the CBA does not provide hourly pay of at least 1.3 times the California minimum wage to all employees, the employer is subject to § 510 without exemption under § 514"). Defendant has established that the CBAs govern the named Plaintiffs' employment. *See Berber*, Dkt. No. 45-12 (Berber's RFA Responses) at 8 (admitting that he was a member of District Council of Iron Workers of the State of California and Vicinity, Local Union 377 ("Local Union 377") at all times during his employment with PSG); *Gay*, Dkt. No. 67-12 (Gay's RFA Responses) at 8 (admitting he was a member of Local Union 377 at all times during his employment with PSG). Because the Local Union 377 was a party to the CBAs[4] and Plaintiffs were members of Local Union 377 for the duration of their employment with PSG, Defendant has established that Plaintiffs' employment was governed by the CBAs.

Plaintiffs also challenge whether Defendant was a party to the CBAs. *See Gay* Opp. at 5-8.

---

[3] The Court addresses whether the CBAs meet these requirements below.

[4] *See* 2014 CBA at 1; 2017 CBA at 1; 2020 CBA at 1 (all listing Local Union 377 as a party to the agreement).

Based on the below documents, the Court finds that Defendant has shown there is no genuine factual dispute as to whether it was a party to the CBAs throughout the relevant period,[5] at least as of the date of this order:

| CBA Name | Evidence Showing Defendant Is or Was a Party to the CBA |
|---|---|
| Agreement Iron Worker Employees State of California and a Portion of Nevada and District Council of Iron Workers of the State of California and Vicinity July 1, 2014 – June 30, 2017<br><br>Perkins Decl. Ex. 1 ("2014 CBA") | Contributing Employers Agreement (executed by PSG on 11/11/2014): PSG agreed "to make contributions to a number of welfare plans and trusts established for union ironworkers performing field ironwork."  Perkins Decl. ¶ 6.<br><br>Iron Workers Independent Agreement (executed by PSG on 1/6/2015): PSG agreed to be "bound by any and all negotiated amendments, modifications, or changes to the Iron Workers Master Agreement in effect at the execution date" and by the "terms and conditions of all successor Iron Workers Master Agreements."  Perkins Decl. Ex. 5. |
| Agreement Iron Worker Employees State of California and a Portion of Nevada and District Council of Iron Workers of the State of California and Vicinity July 1, 2017 – June 30, 2020<br><br>Perkins Decl. Ex. 2 ("2017 CBA") | Power of Attorney Authorization (executed by PSG on 1/4/2017): PSG granted Western Steel Council, Inc. the power to represent PSG in union contract negotiations with the District Council of Iron Workers of the State of California and Vicinity and to enter into new CBA to replace agreement set to expire in June 2017.  *See* Perkins Decl. Ex. 6.<br><br>Agreement to Extend Current Agreement: agreement "that the California Ironworker Employers Council, of which Western Steel Council, Inc. was and is a member, and the District Council of Iron Workers of the State of California and Vicinity executed in 2017 during negotiations regarding the terms of a new CBA." Perkins Decl. ¶ 9; Ex. 7. |
| Agreement Iron Worker Employees State of California and a Portion of Nevada and District Council of Iron Workers of the State of California and Vicinity July 1, 2017 – December 31, 2024 | Power of Attorney Authorization (executed by PSG on 5/10/2021): PSG granted Western Steel Council, Inc. the power to act as PSG's "representative and agent with respect to the union contract negotiations with the District Council of Iron Workers of the State of California and Vicinity" and "to enter in to a new [CBA] with the Union to replace the agreement which expired June 30, 2020." Perkins Decl. Ex. 8. |

---

[5] The class period for the *Gay* case is April 6, 2016 through final judgment.  *See Gay* Case, Dkt. No. 1 ("*Gay* Notice of Removal") at ECF 56.  Named Plaintiff in the *Berber* PAGA case was an employee from November 2019 to May 2020.  *See Berber* Case, Dkt. No.1 ("*Berber* Notice of Removal") at ECF 16.

6

| Perkins Decl. Ex. 3 ("2020 CBA") | Agreement: In May 2021, the California Ironworker Employers Council ("the collective bargaining representative for the Employers," including Western Steel Council) and the District Council of Iron Workers of the State of California and Vicinity "agreed on the terms of the 2020 CBA, which was retroactive to July 1, 2020." Perkins Decl. ¶ 11; *id.* Ex. 9. |
|---|---|

The Court finds that Defendant has shown that Plaintiffs' employment was governed by these CBAs throughout the relevant class periods, at least as of the date of this order.

### D. Preemption

#### v. Legal Standard

The Ninth Circuit applies a two-step inquiry to determine if a plaintiff's claim is preempted under § 301 of the LMRA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007). First, the court asks whether the asserted cause of action involves a "right [that] exists solely as a result of the CBA." *Id.* at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985)). If not, the court proceeds to the second step and asks "'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis*, 913 F.3d at 1153 (citations and quotations omitted and alterations in original). Interpretation "is construed narrowly in this context." *Id.* If claims are dependent on interpretation of the CBA, then the claim is preempted by § 301; if not, the claim may proceed under state law. *Burnside*, 491 F.3d at 1059-60.

#### vi. The *Gay* Plaintiffs' Claims

The *Gay* Plaintiffs' First Amended Complaint alleges the following causes of action: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) untimely payment of final wages; (6) untimely payment of wages during employment; (7) non-compliant wage statement; (8) failure to keep accurate and complete payroll records; (9) failure to reimburse business expenses; and (10) violation of California's Unfair Competition Law. *Gay* Notice of Removal at ECF 74-79, ¶¶ 5-58.

        a.  Overtime, Meal Period, and Rest Period Claims (First, Second, and Third Causes of Action)

As an initial matter, this Court has already found that "the second prong of the § 301 preemption test is satisfied with respect to [the *Gay*] Plaintiffs' overtime, meal period, and rest period claims." *Gay*, 2021 WL 2917095, at *3. Plaintiffs repeat their earlier argument, which the Court rejected, that these claims are not preempted by the LMRA. *See Gay* MSJ Opp. at 13-18. Moreover, in a recent case, Judge Beeler of this district persuasively found that under the same 2017 and 2020 CBAs at issue here, the overtime, meal period, and rest period claims were preempted based on *Burnside* prong one. *See Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 161892, at *3-4 (N.D. Cal. Jan. 18, 2022).

As to the overtime claim at issue in *Rodriguez*, Judge Beeler pointed out that "§ 510 does not apply to an employee covered by a valid CBA 'if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.'" *Id.* at *3 (quoting Cal. Lab. Code § 514). Judge Beeler found that the CBA met § 514's requirement because, in part, it "provides for wages, hours of work, and working conditions . . . provides for premium wages for overtime . . . . [a]nd . . . provides a base rate of pay of more than 30 percent of the applicable California minimum wage." *Id.* Having reviewed the CBAs, this Court agrees with Judge Beeler that they meet § 514's requirements. *See Gay* MSJ at 17 n.4 (detailing California minimum wage for 2017-2022);[6] 2017 CBA at § 7 (setting wage rates); 2020 CBA at § 7 (same); 2017 CBA at § 7 at 75-78 (Schedule Apprentices Hourly Wage Rates and Journeyman Iron Workers Total Hourly Wage & Fringe Benefit Package); 2020 CBA at 71-78 (same); 2017 CBA § 6 (detailing premium wages for overtime); 2020 CBA § 6 (same). Plaintiffs' overtime claim is therefore preempted under *Burnside* prong one.

---

[6] Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, the Court takes note of the minimum wage figures listed on *History of California Minimum Wage*, https://www.dir.ca.gov/iwc/minimumwagehistory.htm and *Minimum Wage Frequently Asked Questions*, https://www.dir.ca.gov/dlse/FAQ_MinimumWage.htm.

Judge Beeler also found that the meal break claim was "conferred by the CBA because the CBA satisfies the statutory exemption to meal periods under Cal. Labor Code § 512(e)." *Id.* at *4. The meal period requirements set forth in Cal. Labor Code § 512(a) "do not apply to an employee covered under a valid CBA that satisfies" § 512(e)'s requirements. *Id.* § 512(e) requires that a CBA:

> expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rate for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

*Id.* (quoting Cal. Labor Code § 512(e)). Judge Beeler found that the CBA meets these requirements "because it provides for wages, hours of work, and working conditions, and it provides a right to meal periods." *Id.* Having reviewed the CBAs, this Court agrees with Judge Beeler that they meet § 512(e)'s requirement. *See* 2017 CBA § 7 (setting wage rates); 2020 CBA at § 7 (same); 2017 CBA at 75-78 (Schedule Apprentices Hourly Wage Rates and Journeyman Iron Workers Total Hourly Wage & Fringe Benefit Package); 2020 CBA at 71-78 (same); 2017 CBA § 6H at 27-28 (detailing special project conditions); 2020 CBA § 6H at 22-23 (same); 2017 CBA § 6 (setting work hours, detailing premium wages for overtime, and providing for meal periods during overtime); 2020 CBA § 6 (same); 2017 CBA § 28 (detailing grievance procedures); 2020 CBA § 28 (detailing grievance procedures). Plaintiffs' meal period claim is therefore preempted under *Burnside* prong one.

As to the rest period claim, Judge Beeler determined that the right to rest periods is also "conferred by the CBA too because it satisfies the exemption to rest periods under Industrial Welfare Commission Order 16-2001 (IWC Wage Order 16)." *Id.* (citing Cal. Code Regs. tit. 8, § 11160 (2002). Judge Beeler explained that "[t]he rest periods do not apply 'to any employee covered by a valid collective bargaining agreement if the [collective bargaining] agreement provides equivalent protection.'" *Id.* (quoting Cal. Code Regs. tit. 8, § 11160, § 11(E)). Because "[t]he wage provisions in the CBA are nearly identical to those in the wage order," Judge Beeler determined that "the plaintiff's right to rest periods is conveyed solely by the CBA." *Id.* Having

9

1   reviewed the CBAs, this Court agrees that the CBA meets the requirements of § 11(E). *See Gay*

2   MSJ at 20 (detailing the requirements of §11(E) and the provisions of the 2017 CBA that

3   correspond to each).[7] Plaintiffs' rest period claim is therefore preempted under *Burnside* prong

4   one.[8]

           b.   Failure to Timely Pay Wages Claims (Fifth and Sixth Causes of Action)

6         Defendant argues that Plaintiffs' fifth and sixth causes of action—claims for failure to pay

7   wages at termination of employment (brought under California Labor Code §§ 201 and 202) and

8   during employment (brought under California Labor Code § 204)—are preempted under the first

9   prong of the *Burnside* test due to the CBA's specification of alternative pay arrangements. *See*

10   *Gay* MSJ at 22; *see also Gay* Notice of Removal at ECF 77, ¶¶ 30-38. Defendant contends that

11   "Labor Code Sections 201-204 do not apply if a collective bargaining agreement provides for

12   different pay arrangements." *Gay* MSJ at 22 (quoting *Gillette v. Stater Bros. Markets, Inc.*, 2019

13   WL 8017735, at *6 (C.D. Cal., 2019)). The *Gillette* opinion based this conclusion on the

14   following § 204 provision: "However, when employees are covered by a collective bargaining

15   agreement that provides different pay arrangements, those arrangements shall apply to the covered

16   employees." Cal. Lab. Code § 204(c); *see Gillette*, 2019 WL 8017735, at *6 (citing Cal. Lab.

17   Code § 204(c)). Section 204, however, explicitly does not apply to wages "mentioned in Section

18   201, 201.3, 202, 204.1, or 204.2." Cal. Lab. Code § 204(a). Consequently, "[Section] 204(c)

19   provides that a CBA's terms apply rather than the content of § 204, when an employee is covered

20   by a CBA with different pay arrangements from those stated in § 204," but it "provides no

21   indications that it applies beyond the context of § 204." *Johnson*, 2022 WL 2789809, at *8-9.

22         The Court therefore finds that while Plaintiffs' sixth cause of action is preempted under

23   *Burnside* prong one based on the language of § 204, this statute cannot form the basis for finding

24   Plaintiffs' fifth cause of action—brought under §§ 201 and 202—preempted under that prong.

---

[7] The Court finds that the 2020 CBA also fulfills these requirements. *See* 2020 CBA § 6(B-2) at 18-19; *id.* § 28 (detailing grievance procedures).
[8] Judge Beeler also found that "[e]ven if the CBA does not exempt the claim, resolution of the claim still requires an analysis of the CBA given that it defines how rest periods will be paid." *Id.* The Court also agrees with this reasoning and adopts it here.

Defendant argues that these claims are derivative and also require the Court to interpret the CBAs. *See Gay* MSJ at 28-29; *Gay* MSJ Reply at 10. Plaintiffs appear to agree that these claims are "partly derivative" but respond that Defendant's preemption "argument fails because Plaintiffs' causes of action do not require interpretation of the CBA as discussed in length above." *Gay* MSJ Opp. at 24. Neither party was particularly clear regarding which claims the fifth cause of action are derivative of. This claim would only survive to the extent that it is derivative of the minimum wage claim, because all other non-derivative claims are preempted. The parties should be prepared to discuss this issue at the upcoming case management conference.

### c. Unpaid Minimum Wages Claim (Fourth Cause of Action)

In analyzing whether an unpaid minimum wages claim was preempted under the second *Burnside* prong, Judge Beeler reasoned as follows:

> To succeed on his claim under state law for a failure to pay minimum wages, the plaintiff must prove that (1) he performed work and (2) he was paid less than the minimum wage. He also must prove (3) the unpaid wages. . . . State law defines "hours worked" as "the time during which an employee is subject to the control of an employer." . . . . The state minimum wage dictates the result for the remaining two elements. There is no need to apply the CBA to resolve the claims because the court can look only to state law. The minimum-wage claim thus is not preempted.

*Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 3641010, at *5 (N.D. Cal. Aug. 23, 2022) (internal citations and quotations omitted). The Court agrees with Judge Beeler's reasoning and adopts it here. Plaintiffs' unpaid minimum wages claim brought under California Labor Code §§ 1194, 1197, and 1197.1 is not preempted by the CBA. *See also Parker v. Cherne Contracting Corp.*, No. 18-CV-01912-HSG, 2019 WL 359989, at *6 (N.D. Cal. Jan. 29, 2019) (holding that plaintiff's § 1194 minimum wage claim was not preempted because "Plaintiff's counsel maintained that the minimum wage claims brought under section 1194 are based on the state minimum wage rate and not any rate defined by the CBA" and defendant had "not identified any substantive dispute over the language of the CBA that would require interpretation").

//

11

        d.  Unreimbursed Business Expenses (Ninth Cause of Action)

As Defendant argues, the Court would need to analyze and interpret several industry-specific terms and phrases to determine Plaintiffs' reimbursable expenses. *See Gay* MSJ at 27. Plaintiff concedes that his "claims for business expense reimbursements might require some interpretation of the CBA" but then appears to argue that no interpretation would be needed because the Court would only need to reference the CBA. *See Gay* MSJ Opp. at 23 ("But 'Because the Court need only refer to the CBA to resolve all of Plaintiff's underlying Labor Code claims, the clarity of the agreements means that no further interpretation was required.'" (quoting *Matson v. United Parcel Service, Inc.*, 840 F.3d 1126, 1135 (9th Cir. 2016) (internal quotations omitted)). The Court does not fully follow Plaintiffs' point: the claims either require interpretation or they do not. Regardless, the Court agrees with Defendant that it would need to interpret, not merely look to or reference, the CBA to decide Plaintiffs' unreimbursed business expenses claim. *See* MSJ at 27 (arguing that, for example, "[t]o determine mileage reimbursements, the Court would need to calculate the most direct regularly traveled route in accordance with CBA terms and phases such as 'the job,' 'designated point,' and 'subsistence provided in the Agreement'" (citations omitted)). Thus, this claim is preempted under *Burnside* prong two.

        e.  Non-Compliant Wage Statements Claim (Seventh Cause of Action), Failure to Keep Requisite Payroll Records Claim (Eighth Cause of Action), Violation of California Business & Professions Code §§ 17200 et seq. (Tenth Cause of Action)

Plaintiffs characterize the non-complaint wage statement claim (seventh cause of action) and the failure to keep payroll records claim (eighth cause of action) as "*partly* derivative," and the violation of California Business & Professions Code §§ 17200 claim (tenth cause of action) as a derivative cause of action. *See Gay* MSJ Opp. at 24 (emphasis added) (stating that "failure to provide complete and accurate wage statements, and failure to provide complete and accurate payroll records are partly derivative causes of action"); *id.* at 20 (describing the "fifth, sixth, eighth and tenth causes of action" as derivative claims). Defendant argues that Plaintiffs' claims for "failure to keep payroll records, failure to provide accurate statements, and violation of Business and Professions Code section 17200" are "purely derivative of the above claims." *Gay* MSJ Reply at 10.

1    Neither party briefed with clarity *which* claims they maintain the derivative claims are
2    derivative of.  These derivative claims survive only to the extent they are based on the minimum
3    wage claim.  The parties should be prepared to discuss this issue at the upcoming case
4    management conference.

          **vii.    Plaintiff Berber's PAGA Claims**

The *Berber* complaint alleges a single cause of action for civil penalties pursuant to the California Private Attorneys General Act of 2004 ("PAGA").  *See Berber* Notice of Removal at ECF 20-22, ¶¶ 49-64.  Berber seeks PAGA penalties for the following alleged Labor Code violations: (1) failure to pay overtime; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay minimum wages; (5) failure to timely pay wages upon termination; (6) failure to timely pay wages during employment; (7) failure to provide complete and accurate wage statements; (8) failure to keep accurate payroll records; and (9) failure to reimburse necessary business-related expenses and costs.  *Id.*

"PAGA claims are derivative of the predicate California Labor Code violations, and therefore rise and fall with those underlying claims."  *Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal. Nov. 8, 2019) (citation omitted); *see also Curtis*, 913 F.3d at 1150 n.3 (noting that the PAGA claim was derivative of the § 510 claim and could only succeed if the plaintiff prevailed on his § 510 claim)). Plaintiff Berber is also a named plaintiff in the *Gay* suit.  Thus, Plaintiff Berber's PAGA claims based on failure to pay overtime, failure to provide meal periods, failure to provide rest periods, and failure to timely pay wages during employment are preempted under *Burnside* prong one for the same reasons discussed with regard to the corresponding Labor Code Claims in *Gay*.  Plaintiff Berber's PAGA claims based on failure to reimburse necessary business-related expenses and costs are preempted under prong two of *Burnside*.  Plaintiff Berber's PAGA claims based on failure to pay minimum wages upon termination are not preempted.  Finally, Plaintiff Berber's PAGA claims based on failure to timely pay final wages, failure to provide complete and accurate wage statements and failure to keep accurate payroll records are derivative and therefore survive only to the extent they are based on the minimum wage claim.

### E. Grievance Procedure

The Grievance Procedure section of the 2017 CBA provides for the creation of a Board of Adjustment "for the settlement of disputes" and states that "[s]aid Board shall have the power to adjust any differences that may arise regarding the meaning and enforcement of this Agreement." 2017 CBA § 28.

Defendant argues that Plaintiffs' cases should be dismissed with prejudice because all of Plaintiffs' "wage-and-hour violations arise under the CBA and are subject to the [CBA's] Grievance Procedure" and Plaintiffs do not allege that they complied with the grievance procedure. *See Gay* MSJ at 29. Defendant contends that "[i]n all likelihood, Plaintiffs cannot pursue their claims in court because a union-represented employee must first attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *Id.* at 29-30. Plaintiffs respond that "the plain language of the 2014 or 2017 CBA does not apply to Plaintiffs' claims, does not impose a waiver of their statutory rights, and does not explicitly require arbitration or any other grievance procedure be undertaken outside of filing an action in court." *Gay* Opp. at 8.

Even "[i]f the Court were to convert Plaintiff's preempted claims into § 301 claims seeking to enforce the terms of the CBA, those claims would fail due to the CBA's grievance and arbitration provisions." *Parker*, 2019 WL 359989, at *5; *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1205 (C.D. Cal. 2015) (collecting cases) (stating that "[p]rior to filing suit, an employee seeking to vindicate personal rights under a collective bargaining agreement must first attempt to exhaust any mandatory or exclusive grievance procedures set forth in the agreement").

For the preempted claims, the Court does not need to address whether Plaintiffs "clearly and unmistakably" waived their right to a judicial forum to vindicate their statutory rights. *See Curtis*, 913 F.3d at 1155 n.6 (explaining that "[b]ecause we hold that Curtis's state law overtime claim is preempted by § 301, we need not address whether Curtis 'clearly and unmistakably' consented to the arbitration of his state law claims"). Plaintiffs' statutory minimum wage claim is a different matter. The Court finds that the language of the CBA does not rise to a "clear and

14

unmistakable" waiver of Plaintiffs' right to a judicial forum to vindicate statutory rights. *Cf. Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80, 82 (1998) (holding that a CBA did not contain "clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination" in part because it was "very general" and broadly covered "'matters in dispute' . . . which could be understood to mean matters in dispute under the contract" (cleaned up)). The Court finds that the CBA's grievance procedure does not bar Plaintiff from bringing his non-preempted state law minimum wage claim in a judicial forum.

### F. Leave to Amend

Citing several motion to dismiss cases, Plaintiffs ask the Court to grant leave to amend. *See Gay* MSJ Opp. at 24. If Plaintiffs wish to amend their complaint, they must file a motion seeking leave of Court and satisfying the requirements of Rule 15. The Court advises Plaintiffs that it has some skepticism that amendment this far into the case and after the summary judgment motion has been briefed and decided would be appropriate.

## III. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motions for summary judgment as set forth above. *Gay* Case, Dkt. No. 67; *Berber* Case, Dkt. No. 45. The Court **HOLDS IN ABEYANCE** Defendant's motion as to the potentially derivative causes of action identified above pending a discussion with the parties at the upcoming case management conference.

The Court further **SETS** a case management conference on October 19, 2023, at 2:00 p.m. The proceedings will take place in Oakland, Courtroom 2, 4th Floor before Judge Haywood S. Gilliam Jr. The parties are **DIRECTED** to meet and confer and submit by October 12, 2023, separate statements, no longer than 3 pages each, outlining their respective positions on which claims are derivative (and which claims the derivative claims are derivative of). Neither party may reargue the merits of any of the rulings in this order in the filings.

//

//

//

The Court **ORDERS** the *Gay* and *Berber* Plaintiffs to file a copy of the operative complaint in their respective case as a standalone document on the docket within seven days of the date of this order.

**IT IS SO ORDERED.**

Dated: 9/15/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge